White v Goodnough (2025 NY Slip Op 51320(U))

[*1]

White v Goodnough

2025 NY Slip Op 51320(U)

Decided on August 22, 2025

Supreme Court, Schoharie County

Lynch, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 22, 2025
Supreme Court, Schoharie County

David White, Plaintiff,

against
Joseph Michael Goodnough, MEREDITH LANE, CHRISTINE BAZICKI, 
 WILLIAM LANE, JAMES MARLEY, AND PAUL FRIELLO, Defendants.

Index No. 2023-333

JAMES F. SOTTILE, ESQ.
Sottile Law PLLC 
Attorneys for Plaintiff
P.O. Box 7169
Capitol Station
Albany, New York 12224 
CAPEZZA HILL, LLP 
By: Lee Greenstein, Esq. 
Attorneys for the Defendant Goodnough
30 S. Pearl Street 
Albany, New York 120577
HORIGAN, HORIGAN, & LOMBARDO, P.C. 
JOSEPH D. GIANNETTI, ESQ. 
Attorneys for Defendants 
William Lane, James Marley, and Paul Friello 
125 Guy Park Avenue 
Amsterdam, NY 12010
PHILLIP A. OSWALD, ESQ. 
RUPP PFALZGRAF LLC 
TAYLOR M. WAY, ESQ.
Attorneys for Defendants 
Meredith Lane and Christine Bazicki 
227 Washington St., Suite IC 
Saratoga Springs, NY 12866

Peter A. Lynch, J.

INTRODUCTION
By Decision and Order dated October 12, 2023, incorporated herein and made a part hereof by reference, this Court granted a default judgment on liability in favor of Plaintiff and against defendant Joseph Michael Goodnough (hereinafter Goodnough), and directed that an inquest would be scheduled by the Court.[FN1]
Of course, the allegations set forth in the Complaint were deemed admitted by virtue of Goodnough's default.[FN2]

After the issuance of the default judgment against Goodnough, the case proceeded against the remaining defendants, who, in turn, reached a settlement with plaintiff on May 23, 2025.[FN3]

On June 17, 2025, this Court scheduled a damage inquest to be conducted July 17, 2025 
@ 10:00 a.m.[FN4]
Plaintiff, with counsel, and defendant Goodnough, with counsel, appeared at the inquest. Plaintiff testified at the inquest. Defendant did not testify, nor call any witnesses. The Court reserved decision.[FN5]

NOW, having duly considered all the evidence presented at the inquest and the arguments of the parties, I hereby make the following findings of fact based on the credible evidence, and reasoned inferences to be drawn therefrom, and reach the following conclusions of law:

FINDINGS OF FACT

On June 29, 2023, defendant Goodnough fraudulently induced David White to unwittingly sign a deed conveying title to the premises located at 148 High Street, Cobleskill, New York (the "premises") to Goodnough; Goodnough recorded the deed in the Schoharie [*2]County Clerk's Office on July 5, 2023, indicating a $25,000.00 sales price. While the record contains the corresponding TP-584 Transfer Tax Return, indicating the $25,000.00 sales price, with $100.00 tax due upon recording, plaintiff testified the form was blank when he signed it.[FN6]
Plaintiff testified that Goodnough never paid him a single penny. Having viewed photos of the premises, it is manifest that a $25,000.00 sales price was patently absurd, notwithstanding the existence of delinquent real estate taxes in the sum of $63,509.38 assessed against the premises at that time. In fine, Plaintiff's claim that the documents were blank when he signed same, and that defendant Goodnough subsequently filled them in without plaintiff's knowledge is credible. It is equally clear Goodnough cited a $25,000.00 sales price to minimize the transfer tax due when he recorded the deed.
Goodnough fraudulently induced White to sign the deed, under the false pretense that plaintiff was simply signing documents to enable Goodnough to pay the delinquent real estate taxes assessed against the premises, as the parties discussed a potential future sale. This Court has had the benefit of observing Mr. White testify, and it is abundantly clear that he is a fragile individual, who succumbed to Goodnough's fraudulent scheme.
By deed dated July 28, 2023, Goodnough conveyed title to the premises to defendants Meredith Lane and Christine Bazicki, in consideration of $142,500.00, less the payment of delinquent taxes by defendants Lane. In fine, Goodnough netted $74,927.17 as the fruits of his fraudulent scheme.[FN7]

Goodnough's actions between June 29, 2023, and July 28, 2023, demonstrates his wanton dishonesty and evil bent. On July 15, 2023, Goodnough had the audacity to call National Grid to request the power be turned off, claiming plaintiff had refused to vacate the premises, notwithstanding that he had paid plaintiff $280K for the premises.[FN8]
Really! Had he actually paid $280K to plaintiff, why in the world would he have sold the premises for $142,500.00? He would not! Moreover, had any payment been made, there would be some document (e.g. cancelled check or wire transfer) to evidence same. There is none! Plaintiff's testimony that Goodnough never paid him a single penny is credible. Goodnough's representation to National Grid that he had paid plaintiff $280 K was not only false but demonstrative of his evil character. Stated another way, turning the power off under these circumstances evinced Goodnough's wanton disregard for plaintiff's wellbeing as a person. It gets worse!
On July 18, 2023, Goodnough called the police to report plaintiff was unconscious in the premises, resulting in a police and EMS response.[FN9]
As depicted in the video of the incident, plaintiff was alive and well when the police and EMS responded. It is manifest that Goodnough was making every effort to remove plaintiff from the premises. Goodnough's false report to the police is an outrageous violation of plaintiff's and societal interests, wasting valuable police and EMS time and resources. Goodnough's evil bent knows no bounds! When not successful in [*3]having the police remove plaintiff, Goodnough devised yet another scheme!
Goodnough took steps to have the water turned off on July 19, 2023. First the power, then the police, and now the water! Goodnough's actions were despicable! While plaintiff was able to have the power and water restored in November 2023, he suffered for 4 months without same. Plaintiff continues to reside in the premises to date, lugging water in containers so he could survive.
The contemplated sale of the premises in accord with the settlement agreement, has not yet taken place.[FN10]
The foregoing notwithstanding, upon the sale, the settlement agreement provides that the first $142,500.00 from the sales proceeds goes directly to the remaining defendants, not to plaintiff.[FN11]

COMPENSATORY DAMAGES
In E.J. Brooks Co. v Cambridge Sec. Seals, 31 NY3d 441, 448-449 [2018], the Court held, the Court held,
"The fundamental purpose of compensatory damages is to have the wrongdoer make the victim whole. Put another way, these measure fair and just compensation, commensurate with the loss or injury sustained from the wrongful act. The goal is to restore the injured party, to the extent possible, to the position that would have been occupied had the wrong not occurred. The damages cannot be remote, contingent or speculative. They need not be immediate, but need to be so near to the cause only that they may be reasonably traced to the event . . . The standard is not one of mathematical certainty but only reasonable certainty.) (Internal quotations and citations omitted; emphasis added).
It is fundamentally clear that plaintiff has suffered real damages directly from the fraudulent conduct of defendant Goodnough. Clearly, upon the ultimate sale of the premises to a third party, plaintiff will incur damages in the sum of $142,500.00 (i.e., first $142,500.00 of sales proceeds to be paid to defendants Lane et al). Payment of delinquent taxes by defendant Lane in the sum of $63,509.38 arguably inured to plaintiff's benefit, but a tax delinquency is a lien against the realty, not a personal obligation. It is equally clear that Goodnough did not make any payment. Moreover, upon payment of the first $142,500.0 0 from the sales proceeds to the remaining defendants, they are being reimbursed for the tax payment. Goodnough contributed nothing to the tax payment, and is not entitled to any credit, therefore. It is the judgment of the Court that defendant Goodnough damaged plaintiff in the sum of $142,500.00. There's more!

EMOTIONAL DAMAGES
Plaintiff testified about the emotional suffering he incurred because of Goodnough's action, including but not limited to the police/EMS contact on July 15, 2023, and the water/power shut off for months. Defendant Goodnough clearly subjected plaintiff to emotional distress, psychological trauma and suffering.
In N.M. v. State of New York, 2025 NY Misc. LEXIS 5520, p. 26 [Ct of Claims 5/28/2025], the Court held,
"Awarding damages for emotional distress is not a precise enterprise and there is no formula for the Court to apply. To the extent that comparable cases are available, they can help to guide the Court's consideration, but they are not binding. Emotional distress awards vary widely depending on the particular facts and circumstances. Damage awards, as with any other type of factual finding is typically left to the fact-finder's common sense and judgment with respect to the evidence presented at trial, including the demeanor of witnesses." (Citations omitted; emphasis added)
Here, Plaintiff was subjected to a months long period of indignity and discomfort, due to the lost power and water. The Court awards $300,000.00 to plaintiff for emotional distress damages against defendant Goodnough (See e.g. Belton v Lal Chicken, Inc., 138 AD3d 609, 611 [1st Dept. 2016]). Yet again, there's more!

PUNITIVE DAMAGES
Distinct from compensatory damages, punitive damages are designed to punish (See Ross v. Louise Wise Servs., Inc., 8 NY3d 478, 489 [2007], where the Court held,
"Punitive damages are not to compensate the injured party but rather to punish the tortfeasor and to deter this wrongdoer and others similarly situated from indulging in the same conduct in the future."
In Walker v. Sheldon, 10 NY2d 401, 404-406 [1961], the Court upheld compensatory damages of $ 1,380 and punitive damages in the amount of $ 75,000, holding,
"Punitive Damages or exemplary damages have been allowed in cases where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the defendant but to deter him, as well as others who might otherwise be so prompted, from indulging in similar conduct in the future . . .
Exemplary damages are more likely to serve their desired purpose of deterring similar conduct in a fraud case, such as that before us, than in any other area of tort. One who acts out of anger or hate, for instance, in committing assault or libel, is not likely to be deterred by the fear of punitive damages. On the other hand, those who deliberately and cooly engage in a far-flung fraudulent scheme, systematically conducted for profit, are very much more likely to pause and consider the consequences if they have to pay more than the actual loss suffered by an individual plaintiff." 
(See also, Ng v. Asquared Group, Inc., 219 AD3d 1341, 1343-1344 [2d Dept. 2023] where the Court upheld an award of $135,208.98 for compensatory damages and $300,000 for punitive damages, finding,
"Punitive damages are not to compensate the injured party but rather to punish the tortfeasor and to deter this wrongdoer and others similarly situated from indulging in the [*4]same conduct in the future. Punitive damages are permitted when the defendant's wrongdoing is not simply intentional but evince[s] a high degree of moral turpitude and demonstrate[s] such wanton dishonesty as to imply a criminal indifference to civil obligations. The misconduct must be exceptional, as when the wrongdoer has acted maliciously, wantonly, or with a recklessness that betokens an improper motive or vindictiveness . . . or has engaged in outrageous or oppressive intentional misconduct or with reckless or wanton disregard of safety or rights."[FN12] (Internal quotations and citations omitted; emphasis added)
Defendant Goodnough's actions were so despicable, that they warrant the imposition of punitive damages (cf. Hobish v. AXA Equit. Life Ins. Co., 2025 NY LEXIS 38 [2025]).
Plaintiff claims that on July 30, 2025, defendant Goodnough pled guilty to felony charges arising out of this matter.[FN13]
Defendant Goodnough has not responded to this claim.
Defendant Goodnough's actions were not only directed toward plaintiff, but also to the public by filing a fraudulent deed in the County Clerk's office. Considering the profoundly wrong, dishonest, wanton, callous, and evil conduct of defendant Goodnough toward plaintiff, the Court has elected to adopt a 5 to 1 ratio of punitive damages to the hard damage component of compensatory damages in the sum of $142,500.00, to arrive at an appropriate award of punitive damages in the sum of $ 712,500.00 in favor of plaintiff and against defendant Goodnough. (See Matter of New York City Asbestos Litig., 236 AD3d 493, 495 [1st Dept. 2025]).

ATTORNEY FEES
Pursuant to the Fifth cause of action set forth in the complaint, Plaintiff sought an award of attorney fees at the rate of $275/hour pursuant to GBL § 349.[FN14]
In this Court's view, the stated hourly rate is reasonable.
GBL§ 349 (h) provides:
"In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff." (Emphasis added)
Plaintiff's counsel claims,
"As of Defendant Goodnough's default in October 2023, legal fees incurred totaled $10,637.48. In connection with preparation for the upcoming inquest, plaintiff has [*5]incurred additional legal fees totaling $3,884.38."[FN15]
Plaintiff's counsel, however, seeks a total attorney fee due in the sum of $225,705.61, and co-counsel fees in the sum of $39,300.00, as well as disbursements in the sum of $8,522.01, for the protracted litigation over the course of 2 years, including claims against the remaining defendants.[FN16]
The total disbursement and attorney fee claim is in the sum of $273,527.62, of which the sum directly attributable to Goodnough is in the sum of $14,521.86. Of course, but for Goodnough's wrongful actions, Plaintiff would not have had to incur any attorney fees in the first instance. In fine, all the fees were either directly, or indirectly, related to the wrongful actions of defendant Goodnough.
The Court notes that Plaintiff did not attach any invoices to the Sottile affirmation to identify and itemize the services rendered.[FN17]
Assuming, arguendo, that the attorney charged $275.00/hour, the total fee claim would represent 994.64 billable hours over the last 2 years, i.e., $273,527.62/$275.00/hour. The period runs from approximately the action commencement on September 11, 2023, to the date hereof, rounded to a period of 24 months. The court is mindful of the extensive attorney work conducted herein since this Court issued written decisions on 18 motions filed over the litigation course. The Court is equally mindful that the alleged complicity of the remaining defendants with defendant Goodnough was never finally determined by a jury of their peers due to the settlement with plaintiff. Stated another way, the Court declines to assess the entire attorney fee claim against defendant Goodnough.
It is the determination of the Court to award attorney fees in the sum of $50,000.00 in favor of plaintiff and against defendant Goodnough.

CONCLUSION
For the reasons set forth above, it is the judgment of this Court that Plaintiff be and hereby is awarded damages against defendant Joseph Michael Goodnough, as set forth below, and it is further,
ORDERED, ADJUDGED, and DECREED, that plaintiff have judgment against defendant Joseph Michael Goodnough for compensatory damages, including damages for emotional distress, in the sum of $442,500.00, and it is further,
ORDERED, ADJUDGED, and DECREED, that plaintiff have judgment against defendant Joseph Michael Goodnough for punitive damages in the sum of $ 712,500.00, and it is further,
ORDERED, ADJUDGED, and DECREED, that plaintiff be and hereby is awarded attorney fees in the sum of $ 50,000.00 against defendant Joseph Michael Goodnough, and it is further,
ORDERED, ADJUDGED, and DECREED, that the foregoing judgment shall have interest thereon upon entry, with costs and disbursements.
This memorandum constitutes the decision, order, and judgment of the Court.[FN18]

Dated: August 22, 2025
Albany, New York
PETER A. LYNCH, J.S.C.

Footnotes

Footnote 1:NYSCEF Doc. No. 32.

Footnote 2:NYSCEF Doc. No. 43 — Verified Complaint.

Footnote 3:NYSCEF Doc. No. 396 -Settlement Agreement.

Footnote 4:NYSCEF Doc. No. 3987 

Footnote 5:The Court granted defendant's request to file a post-hear hearing brief on or before August 15, 2025, and directed that plaintiff's reply brief be filed on or before August 22, 2025.

Footnote 6:Defendant's Exhibit "F."

Footnote 7:NYSCEF Doc. No. 323 — Statement of Sale dated July 28, 2023.

Footnote 8:Plaintiff's Exhibit "4" — recorded phone call between Goodnough and National Grid.

Footnote 9:Plaintiff's Exhibit "7" — audio/video recording of police and EMS response.

Footnote 10:NYSCEF Doc. No. 396.

Footnote 11:NYSCEF Doc. No. 2 - 

Footnote 12:Note, the Court reduced the $700,000.00 punitive damage award as excessive and reduced same to $300,000.00.

Footnote 13:NYSCEF Doc. No. 409 — Sottile Reply ¶ 2.

Footnote 14:NYSCEF Doc. No. 43- Complaint ¶ 103.

Footnote 15:NYSCEF Doc. No. 407 — Sottile Affirmation ¶ 2.

Footnote 16:NYSCEF Doc. No. 407 — Sottile Affirmation ¶ 3 to 5.

Footnote 17:NYSCEF Doc. No. 407 — Sottile Affirmation.

Footnote 18:Compliance with CPLR R 2220 is required.